WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore  (JCS-6031)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744
John K. Cunningham (JC-4661)

SPECIAL COUNSEL TO THE BANK OF NEW
YORK, AS INDENTURE TRUSTEE FOR THE
SENIOR SECURED NOTES

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SOLUTIA INC., et al., | ) | Case No. 03-17949 (PCB) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## <u>NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that The Bank of New York, as Indenture Trustee for the

11.25% Senior Secured Notes due 2009 issued by Solutia Inc. ("Solutia," and together with its

affiliated debtors and debtors-in-possession, the "Debtors") and/or its predecessor, by and

through its undersigned counsel, hereby appeal to the United States District Court for the

Southern District of New York under 28 U.S.C. § 158(a) from each and every part of (i)

Memorandum Decision on Joint Motion for Partial Summary Judgment with Respect to Claim

No. 6210 (11.25% Senior Secured Notes) issued by the United States Bankruptcy Court for the

Southern District of New York (Judge Prudence Carter Beatty) on November 9, 2007 [Docket

No. 4307] and (ii) Final Order (the "Order") Granting Partial Summary Judgment in Favor of the

Debtors and Creditors' Committee Regarding the Debtors' Objection to Claim No. 6210 Filed by

The Bank of New York as Indenture Trustee for the 2009 Noteholders entered by the United

States Bankruptcy Court for the Southern District of New York (Judge Prudence Carter Beatty)

on November 26, 2007 [Docket No. 4393].  A copy of the Memorandum Decision and the Order

appealed from are attached hereto as Exhibit A.

The names of all parties to the decision and order appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

| Parties | Attorneys |
|---|---|
| The Bank of New York, as Indenture Trustee for the Senior Secured Notes | J. Christopher Shore, Esq.<br>Gerard Uzzi, Esq.<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, New York 10036-2797<br>Telephone: (212) 819-8200 |
| | John K. Cunningham, Esq.<br>White & Case LLP<br>200 South Biscayne Boulevard, Suite 4900<br>Miami, Florida 33131<br>Telephone: (305) 371-2700 |
| Debtors and Debtors-in-Possession | Richard M. Cieri, Esq.<br>Jonathan S. Henes, Esq.<br>Colin Adams, Esq.<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022-4611<br>Telephone:  (212) 446-4800 |
| | Thomas L. Campbell, Esq.<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, Illinois 60601-6636<br>Telephone:  (312) 861-2000 |

|  | Jonathan M. Landers, Esq.<br>Gibson Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone:  (212) 351-4000 |
| --- | --- |
| Official Committee of Unsecured Creditors<br>of Solutia Inc., et al. | Daniel H. Golden, Esq.<br>Ira S. Dizengoff, Esq.<br>Andrew J. Rossman, Esq.<br>Ryan C. Jacobs, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>500 Madison Avenue<br>New York, New York 10022-2524<br>Telephone:  (212) 872-1000 |
|  | James R. Savin, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 887-4000 |
| Office of the United States Trustee | Greg M. Zipes, Esq.<br>Office of the United States Trustee for the<br>Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Telephone:  (212) 510-0500 |

Dated:   November 28, 2007
       Miami, Florida

 

                     WHITE & CASE LLP
                     1155 Avenue of the Americas
                     New York, New York 10036-2787
                     (212) 819-8200
                     J. Christopher Shore (JCS-6031)

                     Wachovia Financial Center
                     200 South Biscayne Boulevard, Suite 4900
                     Miami, Florida 33131
                     (305) 371-2700
                     John K. Cunningham (JC-4661)

                     By: ___/s/ John K. Cunningham_____
                          John K. Cunningham (JC-4661)

                     SPECIAL COUNSEL TO THE BANK OF
                     NEW YORK, AS INDENTURE TRUSTEE
                     FOR THE SENIOR SECURED NOTES

**EXHIBIT "A"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                       :

In re                          :       Chapter 11

                                  :

**SOLUTIA INC.,** *et al.,*       :       Case No. 03-17949 (PCB)

                                  :

             Debtors.       :       (Jointly Administered)
---------------------------------------------------------------x

**THIS ORDER APPLIES TO:**

| | | |
|---|---|---|
| **X**  All Debtors | | ___  Axio Research Corporation |
| ___  Solutia Inc. | | ___  Solutia Investments, LLC |
| ___  Solutia Business Enterprises Inc. | | ___  Beamer Road Management Company |
| ___  Solutia Systems, Inc. | | ___  Monchem, Inc. |
| ___  Solutia Overseas, Inc. | | ___  Solutia Inter-America, Inc. |
| ___  CPFilms Inc. | | ___  Solutia International Holding, LLC |
| ___  Solutia Management Company, Inc. | | ___  Solutia Taiwan, Inc. |
| ___  Monchem International, Inc. | | ___  Solutia Greater China, Inc. |

**FINAL ORDER GRANTING**
**PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE**
**DEBTORS AND CREDITORS' COMMITTEE REGARDING THE**
**DEBTORS' OBJECTION TO CLAIM NO. 6210 FILED BY THE BANK**
**OF NEW YORK AS INDENTURE TRUSTEE FOR THE 2009 NOTEHOLDERS**

For the reasons set forth in the Court's November 9, 2007 Memorandum Decision on

Joint Motion for Partial Summary Judgment with Respect to Claim No. 6210 (11.25% Senior

Secured Notes) (the "Memorandum Decision"),[1] partial summary judgment is hereby granted

pursuant to Fed. Fed. R. Civ. Proc. 56(a), made applicable pursuant to Fed. R. Bankr. P. 7056, in

favor of the above-captioned debtors and debtors in possession (collectively, the "Debtors") and

the Official Committee of Unsecured Creditors (the "Creditors' Committee") and against The

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Memorandum Decision.

Bank of New York as Indenture Trustee for the 2009 Noteholders ("Indenture Trustee") on the issue of the allowed amount of Claim No. 6210 filed on behalf of the 2009 Noteholders. Based upon the above findings and conclusions, and after due deliberation and sufficient cause appearing therefore, and the Court finding no just reason for delay for the reasons set forth in the Court's Memorandum Decision,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157. Venue of this proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Notice and the opportunity for a hearing on the Debtors' Objection to Claim No. 6210 and the parties' respective motions related to the partial summary judgment proceeding were appropriate under the particular circumstances and no other or further notice need be given.

2. The joint motion of the Debtors and the Creditors' Committee for partial summary judgment sustaining the Debtors' Objection to Claim No. 6210 is granted. The motion for partial summary judgment filed by the Indenture Trustee is denied.

3. Claim Number 6210 shall be allowed as a secured claim against Solutia in the amount that is equal to the sum of (a) $181,711,550 (i.e., the original issued amount of the 2009 Notes); and (b) $5,666,797 (i.e., the accrued pre-petition original issue discount).

4. Pursuant to Section 506(b) of the Bankruptcy Code, the following interest on Claim Number 6210 shall be allowed: (i) $21,611,958 (i.e., the accrued original issue discount from the petition date through November 9, 2007); and (ii) an amount equal to the number of days from November 9, 2007 to the effective date of Solutia's Plan multiplied by $20,158 (i.e., the daily accrued original issue discount from November 9, 2007 through January 15, 2008); provided, however, that if the effective date of Solutia's Plan has not occurred on or prior to

January 15, 2008, then the number of days after January 15, 2008 until the effective date of Solutia's Plan shall be multiplied by $21,735 (i.e., the daily accrued original issue discount after January 15, 2008).

5.  Nothing in this Order shall be construed as addressing in any respect the Debtors' obligations under the Final Order (I) Approving Use of Cash Collateral, (II) Authorizing Debtors to Incur Post-Petition Secured Indebtedness, and (III) Granting Security Interests and Superpriority Claims Pursuant to Sections 105(a), 361, 363, 364(c) and 364(e) of the Bankruptcy Code and Bankruptcy Rules 2002, 4002 and 9014, dated January 16, 2004 (the "Final Cash Collateral Order").

6.  This Order is final and appealable.

Dated: November 26, 2007
        New York, New York

/s/ Prudence Carter Beatty
PRUDENCE CARTER BEATTY
UNITED STATES BANKRUPTCY JUDGE

Consented to as to form by the counsel for the Debtors, the Creditors' Committee and the 11.25% Senior Secured Notes.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                          )
In re                                     )          Chapter 11
                                          )
SOLUTIA INC., et al.,                     )          Case No. 03-17949 (PCB)
                                          )          Jointly Administered
            Debtors.                      )
                                          )
--------------------------------------------------------x

APPEARANCES

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
        J. Christopher Shore, Esq.
        Gerard Uzzi, Esq.

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
        John K. Cunningham, Esq.

        SPECIAL COUNSEL TO THE BANK OF NEW
        YORK, AS INDENTURE TRUSTEE FOR THE
        SENIOR SECURED NOTES


KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
        Richard M. Cierei, Esq.
        Jonathan S. Henes, Esq.
        Colin Adams, Esq.

200 East Randolph Drive
Chicago, Illinois 60601-6636
        Thomas L. Campbell, Esq.

        ATTORNEYS FOR THE DEBTORS AND DEBTORS

1

IN POSSESSION

AKIN GUMP STRAUSS HAUER & FELD LLP
500 Madison Avenue
New York, New York 10022-2524
 Daniel H. Golden, Esq.
 Ira S. Dizengoff, Esq.
 Andrew J. Rossman, Esq.
 Ryan C. Jacobs, Esq.

1333 New Hampshire Avenue, N.W.
Washington, DC 20036
 James R. Savin, Esq.

 ATTORNEYS FOR THE OFFICIAL COMMITTEE
 OF UNSECURED CREDITORS OF SOLUTIA INC.,
 ET AL.

MEMORANDUM DECISION ON JOINT MOTION
FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT
<u>TO CLAIM NO. 6210 (11.25% SENIOR SECURED NOTES)</u>

**Beatty, Prudence Carter**, **U.S.B.J.:**

 This matter is before the court on the joint motion for partial summary judgment on the

proper amount of a claim filed on behalf of the holders of the Debtors' 11.25% Senior Secured

Notes (the "2009 Notes").

STATEMENT OF FACTS[1]

<u>The Parties</u>

---

 [1] Nothing in this Statement of Facts is a conclusion of law on the disputed issues in this contested matter. However, for the sake of simplicity, in the Statement of Facts the court will use some words and terms, such as principal, whose legal meaning or effect is disputed and the subject matter of this decision.

2

1.  The Bank of New York ( the "2009 Indenture Trustee")[2] is the indenture trustee for the 2009 Notes issued by Solutia Inc. ("Solutia") and/or its predecessor.

2.  Solutia is a publicly-owned corporation organized and existing under the laws of Delaware, with headquarters and principal place of business located in the State of Missouri.[3]

3.  On December 17, 2003 (the "Petition Date"), Solutia and a number of its subsidiaries and affiliates (the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code ("Code")[4] in this court (the "Cases").

4.  By order dated December 18, 2003, the Cases were consolidated for procedural purposes. The Cases have never been substantively consolidated and the Debtors' plan does not provide for substantive consolidation.

5.  The Creditors' Committee is the statutory committee of unsecured creditors appointed by the Office of the United States Trustee for the Southern District of New York on January 6, 2004 pursuant to Code §1102, as reconstituted from time to time.

Jurisdiction and Venue

---

[2]  By agreement dated January 16, 2004, The Bank of New York replaced HSBC Bank USA ("HSBC") as the 2009 Indenture Trustee.

[3]  The Debtors and their non-debtor affiliates are a world-wide group that manufactures and sells chemical based materials for industrial and consumer use. They are a world leader in a number of markets, including custom-coated window film, PVB which is used as a plastic interlayering in laminated safety glass, Nylon 6, 6, of which they are one of the few fully integrated producers, as well as certain specialty industrial fluids including heat transfer and aviation hydraulic fluids. In 2006 the Nylon business generated approximately $1.7 billion in net sales, accounting for approximately 62% of the Debtors' total net sales. The Debtors' total net sales for 2006 were approximately $2.8 billion.

[4]  This case is governed by the Code as it existed prior to the amendments that became effective in October 2005.

3

6.  This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b).

7.  Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

Issuance of the 2009 Notes

8.  On July 9, 2002 Solutia issued a financing package (the "Financing Package") under which it received gross proceeds totaling approximately $200.7 million.    The Financing Package provided for the issuance of the 2009 Notes in the face amount of $223 million as well as for the granting of warrants to purchase shares of Solutia common stock at an exercise price of $7.59 per share.

9.  Of the proceeds received by Solutia, by simple mathematical calculation $181,771,550 represented the discounted issue price for the 2009 Notes.  See ¶ 12, infra.  The 2009 Notes are secured by shared first and second liens on a wide variety of collateral.  There is an intercreditor agreement with respect to the collateral.

10.  An indenture (the "Original Indenture") was executed by and between SOI Funding Corp. ("SOI Funding"), a Delaware corporation and a special purpose entity, as issuer, and HSBC, as indenture trustee, dated as of July 9, 2002.  By executing the First Supplement to the Original Indenture, Solutia replaced SOI Funding as obligor under the Indenture and on the 2009 Notes.  By executing the First Supplement, the Second Supplement, and/or the Third Supplement (the Original Indenture together with the First Supplement, the Second Supplement and the Third Supplements thereto being the "Indenture") each of the following subsidiaries of Solutia guaranteed Solutia's obligations: CPFilms Inc., Monchem, Inc., Monchem International, Inc., Solutia Systems, Inc., Solutia Business Enterprises, Inc. and Solutia Investments LLC (collectively, the "Subsidiary Guarantors").  See Tabs 1, 6 and 8 of the Agreed Upon Exhibits.

4

11.   As originally issued the 2009 Notes were not registered and therefore could not be freely traded.  Subsequent to issuance and in order to fulfill certain contractual obligations and to avoid certain interest increases, Solutia took the necessary action to file with the Securities and Exchange Committee the documents required to register the 2009 Notes.  In its September 17, 2002 form S-4 Registration Statement and October 17, 2002 Amendment thereto, Solutia described its offer to exchange all existing 2009 Notes for new 2009 Notes bearing all of the same terms and conditions except that the new notes would be freely tradeable, with certain limited exceptions.  See Tabs 5 and 7 of Agreed Upon Exhibits.  There is nothing in the record which indicates how many 2009 Noteholders hold the original 2009 Notes and how many hold the new 2009 Notes.

12.   The new 2009 Notes bear the following legend on their top face: "THIS SECURITY IS ISSUED WITH ORIGINAL ISSUE DISCOUNT FOR THE PURPOSES OF SECTION 1271 et seq. OF THE INTERNAL REVENUE CODE.  FOR EACH $1,000 PRINCIPAL AMOUNT AT MATURITY OF THIS SECURITY, THE ISSUE PRICE IS $814.85 AND THE AMOUNT OF ORIGINAL ISSUE DISCOUNT IS $185.15.  THE ISSUE DATE OF THIS SECURITY IS JULY 9, 2002 AND THE YIELD TO MATURITY IS 15.751%."  The form of the new 2009 Note is Ex. D to J. Christopher Shore Declaration Sworn to September 21, 2007 ( the "Shore Declaration") and Tab 2 of the Agreed Upon Exhibits.

13.   The pertinent provisions of the single page Guarantees attached to the new 2009 Notes provide that the Subsidiary Guarantors jointly and severally unconditionally guarantee "the due and punctual payment of the principal of, and premium, if any, and interest on the [2009] Notes, when and as the same shall become due and payable, whether at maturity, by acceleration

5

or otherwise, the due and punctual payment of interest on overdue principal of, and premium and, to the extent permitted by law, interest, and the due and punctual performance of all other obligations of the Company to the [2009] Noteholders or the [2009 Indenture] Trustee * * * ". See Ex. D to Shore Declaration and Tab 2 of the Agreed Upon Exhibits.

14.  On their face, the 2009 Notes have a maturity date of July 15, 2009 ( the "Stated Maturity Date").  Beginning on January 15, 2003, semi-annual interest payments of 11.25% per annum interest (the "Interest Payments") became due on account of the 2009 Notes on January 15th and July 15th of each year.  The Interest Payments are calculated at the rate of 11.25% of $223 million using a 360 day year.  See ¶ 1 of 2009 Note.   At all times until the Petition Date, Solutia made the required Interest Payments.

15.  All optional redemption periods with respect to the 2009 Notes have expired.

16.  Article Nine of the Original Indenture is entitled "Discharge of Indenture; Defeasance."  In its various sections Article Nine sets forth various procedures by which Solutia and the Subsidiary Guarantors can cause the Indenture to cease to be of further effect.  Certain of the sections contemplate the deposit with the 2009 Indenture Trustee in trust of funds sufficient to pay all amounts due through maturity.  Under certain circumstances defeasance requires Solutia to deliver an opinion of counsel that 2009 Noteholders will not recognize income, gain or loss for U.S. federal income tax purposes and that they will be subject to U.S. federal income tax in the same amounts, in the same manner and at the same time as would have been the case if defeasance had not occurred.

17. The events of default are set forth in Section 6.01 of the 2009 Indenture.  The only event material to this matter is event (7) which provides that the filing of a proceeding for

reorganization under any applicable law is an event of default.

18.  Section  6.02 of the Original Indenture provides that if an event of default specified in Section 6.01(7) occurs the principal of and premium, if any, and accrued interest, if any, on the outstanding 2009 Notes "shall become immediately due and payable without any declaration or other act on the part of the Trustee or any Holder."  All other defaults require the action of a specified percentage of holders and the giving notice.

19. Section 6.02 of the Original Indenture concludes:

"The Holders of at least a majority in principal amount of the outstanding Notes, by written notice to the Company [i.e. Solutia] and to the [2009 Indenture] Trustee may waive all past defaults and rescind and annul a declaration of acceleration and its consequences if: (i) all existing Events of Default, other than the nonpayment of the principal of and premium, if any, and interest, if any, on such Notes that have become due solely by such declaration of acceleration, have been cured or waived; and (ii) the rescission would not conflict with any judgment or decree of a court of competent jurisdiction."

20.  Section 6.04 of the Original Indenture provides as follows:

"Provided the Notes are not then due and payable by reason of a declaration of acceleration, the Holders of a majority in principal amount of Notes at the time outstanding may on behalf of the Holders of all the Notes waive any past Default with respect to such Notes and its consequences by providing written notice thereof to the Company and the Trustee, except a Default (1) in the payment of interest on or the principal of any Note or (2) in respect of a covenant or provision hereof which under this Indenture cannot be modified or amended without the consent of the Holder of each outstanding Note affected.  In the case of any such waiver, the

7

Company, the Trustee and the Holders of the Notes will be restored to their former positions and rights under this Indenture, respectively; PROVIDED that no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto."

21.  A letter dated April 7, 2007 (the "April 7 Notice") addressed to Solutia and the 2009 Indenture Trustee with a reference line entitled "Notice of Rescission of Acceleration" was sent by certain holders of the 2009 Notes.  The signatories state that pursuant to Section 6.02 and 6.04, inter alia, they waive all past defaults under Section 6.01(7) of the Original Indenture arising from the filing of the Chapter 11 cases and they rescind and annul the acceleration of the 2009 Notes resulting from the Event of Default under Section 6.01(7) of the Original Indenture.  The letter states that "this notice and the contents hereof shall be binding upon each holder and its successors and assigns."  Because the amounts held by the signers of the letter have been redacted, the court cannot determine what percentage of the 2009 Noteholders signed the letter. However, the court presumes that the holders of at least 50% in principal amount of the 2009 Notes were signatories.

22.  It would appear that if it is effective the April 7 Notice is binding on all holders of the 2009 Notes.  Section 6.05 of the Original Indenture is captioned "Control by Majority."  The first sentence of this section reads: "The holders of at least a majority in aggregate principal amount of the outstanding [2009] Notes may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on the Trustee."  Holders are generally precluded from suing individually and they may not use the Original Indenture to prejudice the rights of another 2009 Noteholder or to obtain a preference or priority over another 2009 Noteholder.

8

23. The April 7 Notice was received by the 2009 Indenture Trustee and the Debtors on May 22, 2007, some six weeks after its date.

24. Section 4.08 of the Original Indenture states that individual 2009 Noteholders may elect to require Solutia to repurchase their 2009 Notes in the event of a Change of Control, a defined term. As pertinent to this contested matter, this defined term includes the occurrence of either of the following events: (1) any person or group (as such term is used in Sections 13(d) and 14(d) of the Securities and Exchange Act) becoming the "beneficial owner" as defined in Rules 13d-3 and 13d-5 of the Securities and Exchange Act, directly or indirectly, of securities representing 50% or more of the voting power of the capital stock of Solutia, or (2) the Continuing Directors, which is also a defined term, ceasing to constitute at least a majority of Solutia's board of directors. The purchase price is stated to be "cash equal to 101% of the aggregate principal [of the 2009 Notes] plus accrued and unpaid interest, if any, to the date of purchase." Any 2009 Note that is not tendered continues to accrue interest. Section 4.08(b)(8) provides that the notice of a change of a Change of Control is to provide the circumstances and relevant facts regarding the Change of Control.

25. Under the terms of the Debtors' Fifth Plan of Reorganization (the "Plan"), discussed infra, if confirmed and the effective date occurs, the composition of Solutia's board of directors will change sufficiently to be within the Change of Control definition. The mechanics of the process by which the Plan would become effective contemplates that the change in the composition of the board of directors would occur before but substantially simultaneously with Solutia receiving the funds necessary to make various cash payments due under the Plan, including the payments necessary to pay off the allowed claim of the 2009 Noteholders, and

9

taking all other action necessary under the Plan to render it effective.

26.   Under the Plan, Solutia's existing shares will be cancelled and new shares issued. The primary holders of the new shares will be the unsecured creditors of the Debtors.  The aggregate change in ownership will significantly exceed 50%, although no single entity or related group of entities is likely to hold that percentage.

27.   Because the terms of the Plan will result in a Change of Control as that term is defined in the Original Indenture at least as to the board of directors, it is the position of the 2009 Noteholders that their claim should be allowed in the amount of 101% of the $223 million face amount of the 2009 Notes plus any accrued but unpaid interest.

Value of Collateral

28.   At the outset of these Cases, the court entered an order permitting the Debtors to obtain secured financing.  Since the 2009 Notes were fully secured on the Petition Date,  the order contained provisions respecting the continuation of their liens and security interests.  The original cash collateral order has been amended several times.  See ECF Doc. No. 278 inter alia.   All of the cash collateral orders have provided for the Debtors to pay interest to the 2009 Noteholders, which they have paid in the amount of the Interest Payments and at the times specified in the 2009 Notes.

29.   Since neither the Debtors nor the Creditors' Committee dispute that the value of the collateral in which the 2009 Noteholders have a security interest exceeds the total amount of the claim the 2009 Noteholders assert it is unnecessary to describe the collateral.  For the purposes of this motion the Debtors and Creditors' Committee have agreed that at least some of the Subsidiary Guarantors are solvent.

Dispute Regarding the Amount of the Allowable Claim of the 2009 Noteholders

30.   On November 29, 2004 and prior to the bar date, the 2009 Indenture Trustee filed a proof of claim (the "Proof of Claim") for the 2009 Notes (Claim No. 6210).  The Proof of Claim asserts a claim for $223 million plus interest, fees and expenses, and other unliquidated amounts. The language in the Proof of Claim is broad and comprehensive; however, it is also very general. Nowhere does the Proof of Claim explicitly state that interest at the contract rate is being sought to the Stated Maturity Date or reflect that acceleration had already occurred automatically.  The amount of the Interest Payments between the expected effective date of the Plan and the Stated Maturity Date would be approximately $60 million.

31.   On June 22, 2007, the Debtors filed their objection to Claim No. 6210 (ECF Doc. No. 3938),  together with a memorandum of law in support of the objection (ECF Doc. No. 3939).

32.  Subsequently the Creditors Committee joined in the Debtors' objection.  Thereafter they filed a Joint Motion for Partial Summary Judgment along with a memorandum of law on September 21, 2007.  See ECF Doc. Nos. 4209 and 4211.  They asserted that the allowed claim of the 2009 Noteholders should be limited to the principal funded at issuance plus the original issue discount accrued through the effective date of the Plan.  They argued that the Debtors were not prepaying the 2009 Notes nor were the 2009 Noteholders entitled to "expectation" damages under the express terms of the Indenture or any legal theory.  Further, they urged that the claim for expectation damages was not included in the Proof of Claim and was time barred.  The 2009 Indenture Trustee also filed a lengthy brief setting forth its legal positions and opposing the Objection.

33.   The parties filed a Stipulation and Agreed Scheduling Order on October 11, 2007.

<u>See</u> ECF Doc. No. 4236.  The Stipulation sets forth in some detail the agreed upon legal issues.

In this decision the court has used the parties' Stipulation as the basis for its discussion and

rulings.  The Oral argument was heard on the Motion for Partial Summary Judgment on October

31, 2007.

<u>The Plan Process</u>

34.  The Debtors filed their original plan (the "Original Plan") and Disclosure Statement

on February 14, 2006.  <u>See</u> ECF Doc. Nos. 2855 and 2856.  Under the Original Plan, the allowed

claim of the 2009 Noteholders was to be paid in cash.  The Original Plan stated that the amount of

the allowed 2009 Noteholder claims would not include claims "for any unamortized original issue

discount, default interest, 'make whole' payment, call premiums or any other similar payments or

penalties."  ECF Doc. No. 2855 at p. 22.

35.  A hearing was held on the Original Disclosure Statement.  The 2009 Indenture

Trustee objected to the treatment of the 2009 Notes under the Plan and the failure to provide them

with voting rights.  There were significant other objections to the Original Plan.  None of the

objections were disposed of on the merits.  Ultimately the hearing on the Original Disclosure

Statement was adjourned without date.

36.  Subsequently over a year after the Original Plan was filed and on May 16, 2007, the

Debtors filed their first amended plan of reorganization (the "First Amended Plan") and first

amended disclosure statement (the "First Amended Disclosure Statement") (ECF Doc. Nos. 3830

and 3831).  By Notice of Hearing  dated May 25, 2007 (ECF Doc. No. 3852), a hearing was

scheduled on the disclosure statement for July 10, 2007.

37.  On June  29, 2007, the 2009 Indenture Trustee filed an objection (Document No.

3971) to the Debtors' First Amended Disclosure Statement objecting to the Debtors' proposed treatment of the 2009 Notes.  As did the Original Plan, the First Amended Plan provided for the payment of the 2009 Noteholders in the allowed amount of their claim on the effective date.

38.   The initial hearing on the First Amended Disclosure Statement was held as scheduled on July 10, 2007.  A number of other parties made substantial objections to the First Amended Plan and/or the First Amended Disclosure Statement.  As a result of some of the objections received certain revisions were made and additional hearings held.  However, it became apparent that approval of a settlement essential to the confirmation of the First Amended Plan would be hotly contested and that it was uncertain whether approval would be granted and whether certain other issues raised would prevent confirmation.

39.   As a result of these uncertainties the Debtors entered into negotiations with the major parties, not including the 2009 Noteholders, rather than moving forward on the then existing plan and disclosure statement.  The negotiations proved to be arduous but resulted in the Debtors reaching an agreement on the terms of an acceptable plan with the major parties other than the 2009 Noteholders in the later part of September.  The Debtors then filed the Plan along with their Fifth Amended Disclosure Statement (the "Disclosure Statement") on October 15, 2007.  See ECF  Doc. Nos. 4241, 4242, 4243 and 4245.  On October 19, 2007 a hearing was held on the Disclosure Statement and it was approved by order signed the same date.  See ECF Doc. No. 4252.  The voting process is now underway and a hearing for the purpose of considering confirmation of the Plan is scheduled for November 29, 2007.

40.   Under the terms of the Plan, the allowed claim of the 2009 Noteholders will be paid in

13

full on the effective date of the Plan.[5]

DISCUSSION

Summary Judgment

This is a contested matter to which Bankruptcy Rule 7056 applies. See Bankr. R. 9014.

Bankruptcy Rule 7056 incorporates Federal Rule of Civil Procedure ("FRCP") 56.  FRCP 56

provides that summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  See Celotex Corp. v. Cartrett, 477 U.S. 317, 322. (1986).   A fact is material

only if it affects the result of the proceeding and a fact is in dispute only when the opposing party

submits evidence such that a trial would be required to resolve the differences.  Hahn v. Sergant,

523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976); In re Rockefeller Center

Properties, Inc., 272 B.R. 524, 540 (Bankr. S.D.N.Y. 2000).

The court's function when faced with a motion for summary judgment is to determine

whether there exist any genuine issues of a material fact to be tried, and not to resolve any factual

disputes.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A summary judgment

motion will not be defeated merely on the basis of conjecture or surmise.   Bryant v. Maffucci,

923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).

---

[5]  Code §§ 1123 and 1124 permit inclusion in a reorganization plan of provisions to
deaccelerate debts and reinstate their original maturity date and cure defaults.  The Debtors have
not chosen to avail themselves of these provisions.

14

In ruling on a motion for summary judgment, the court is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment. Chambers v. TRM Copy Centers Corp., 43 F.23d 29, 36 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with affidavits, depositions, or other sworn evidence setting forth specific facts showing there exists a genuine issue of material fact. Rule v. Brine, 85 F.3d 1002, 1011 (2d Cir. 1996), accord FRCP 56(e). The evidence favoring the nonmoving party must be more than merely colorable. Anderson, 477 U.S. at 249.

Proper Amount of Proof of Claim

There are a number of legal aspects to fixing the proper amount of the allowable claim of the 2009 Noteholders. At oral argument, counsel for the 2009 Noteholders stressed the provisions of the Change of Control section of the Original Indenture. In their memorandum of law, the 2009 Noteholders have also argued a number of other issues.

Any analysis of the allowance of a proof of claim starts with Code § 502 which governs the allowance of a claim. A claim is deemed allowed unless a party in interest objects. See Code § 502(a). If an objection is made the court after notice and a hearing is to determine the amount of the claim "as of the petition date." See Code §502(b) and Bankr. R. 3007. Here an objection has been made by the Debtors, which has been joined in by the Creditors' Committee. The Debtors and the Creditors' Committee are parties in interest. See Code §1109(b). The 2009 Noteholders have agreed to the joinder by the Creditors' Committee.

In arguing that the Change of Control provisions of the 2009 Indenture are material to fixing the proper amount of their claim, the 2009 Noteholders are asking this court to determine

15

their claim by reference to the terms of the Plan.  However, Code § 502 (b) requires that a claim be determined as of the filing date.  See also Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947 (2000) ("[W]hen 'the statute's language is plain, the sole function of the courts' - at least where the disposition required by the text is not absurd - 'is to enforce it according to its terms.'")  As of the filing date the Plan was not in existence nor was there any agreement or understanding in place that would have resulted in a Change of Control within the meaning of the 2009 Indenture.

Allowance of claims is not a forward-looking process as the 2009 Noteholders would have it.  Their claim under the Change of Control provision of the 2009 Indenture must therefore fail unless some other Code provision salvage it.  On the facts of this case and particularly in light this court's holding that the 2009 Notes remain accelerated and are thus being paid off at maturity rather than being "prepaid" under the Plan, the Change of Control portion of the Proof of Claim must be disallowed.[6]

The April 7 Notice

---

[6]  In any event, the Change of Control section provides that it is the individual holders of 2009 Notes who may elect to put their Notes to the Debtors in the event of a Change of Control. In contrast, the provisions of the Original Indenture relating to default, such as the automatic acceleration, apply to all Noteholders.  Plainly, the language of the Change of Control provision is applicable only in a pre-acceleration situation in which some holders might not want to continue to hold their notes under new ownership.  Because the 2009 Notes have matured due to acceleration, they will be paid off on the effective date.

It is irrelevant to the 2009 Noteholders who the owners or the board of directors of Solutia will be after the 2009 Notes are paid off on the Effective Date of the Plan.  The Change of Control provision in the 2009 Indenture does not operate to provide a premium here.  Nor does it serve to preserve the yield,  a function for which it was clearly not intended.

This court finds the April 7 Notice ineffective and void.  It did not effect a deacceleration of the 2009 Notes for several reasons.  The language of Section 6.02 of the Original Indenture only permits a deacceleration that was caused by the giving of a "notice of acceleration."  Here the acceleration occurred automatically by virtue of the terms of the Original Indenture.  It was not the result of any notice.  As the Original Indenture is drafted, it does not appear to this court that the 2009 Noteholders can undo an automatic acceleration under Section 6.01(7) by the giving of notice under Sections 6.02 or 6.04 or the waiving of any past defaults under Sections 6.02 or 6.04.  Furthermore, the deacceleration clause in Section 6.02 appears to prohibit  waiving of defaults relating to the payment of principal and interest but it may be that the language of the section is simply difficult to parse.  What Section 6.04 adds to the rights granted to the 2009 Noteholders under Section 6.02 where automatic acceleration has occurred is not entirely obvious.  However it is clear that Section 6.04 also requires giving a notice to the Debtors and the 2009 Indenture Trustee by the 2009 Noteholders.

There can be no dispute that the 2009 Note Indenture provides for automatic acceleration upon filing of a petition for reorganization.  Upon acceleration the entire debt becomes due and owing.  Acceleration moves the maturity date from the original maturity date to the acceleration date and that date becomes the new maturity date.  See Federal National Mortgage Assn. v. Miller, 123 Misc. 2d 431, 432, 473 N.Y.S. 2d 743 (Sup. Co., Nassau Co., N.Y., Spec. Term, Part 1 1984) ("Federal Mortgage") and Black's Law Dictionary (8th ed. 2004)(acceleration is defined as "the advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately.")   The maturity date of the 2009 Notes is now  the Petition Date.  This is the result that the 2009 Noteholders bargained for in Section 6.01(7) of the Indenture.  Counsel for the 2009

17

Noteholders at oral argument stated that such clauses were standard in indentures and had been

for many years.  It was entirely appropriate to provide for automatic acceleration in the Original

Indenture since the giving of a notice of acceleration post-petition would violate the automatic

stay.

      This court finds that the April 7 Notice is void because it violated the automatic stay.[7]  See

_____

    [7]  The 2009 Noteholders argue that if this court finds a violation of the automatic stay that they are entitled to a hearing on their oral motion to vacate the automatic stay retroactively.  This court sees no reason at this late date in the case to grant the request for an evidentiary hearing on the untimely motion.  No material facts have been alleged to be in dispute.  Compare In re LHD Realty Corp., 726 F.2d 327, 333 (7th Cir. 1984) ("LHD Realty").  The Debtors Original Plan was based on the acceleration of the 2009 Notes.  Likewise the Debtors' First Amended Plan was based on the Acceleration of the 2009 Notes.  Both plans provided for the 2009 Notes to be paid off on the effective date of the plan.  Neither plan contemplated that interest at the contract rate would be paid until the Stated Maturity Date.  Both plans were filed before the April 7 Notice was received.  The amount of the claim for interest at the contract rate until the Stated Maturity Date which the 2009 Noteholders seek to recover through deacceleration is approximately $60 million.  That is a significant amount.

    The April 7 Notice appears to have been a tactical response to a decision issued on March 5, 2007 in In re Calpine Corp., 150 B.R. 529 (Bankr. S.D.N.Y. 2007)(BRL), on appeal ("Calpine").  In Calpine the court was confronted with a request to approve debtor in possession borrowings to refinance an existing debtor in possession facility and also to pay off certain prepetition secured debts.  The borrowings, if approved, would replace higher interest rate debt with lower interest rate debt which would provide a significant savings to the debtor in possession as well as eliminating the need to pay certain adequate protection fees.  Judge Lifland defined the principal issue before him to be whether an indenture drafting omission relieves the debtors of the obligation to pay "prepayment premiums" or similar "make-whole" damages upon repayment in full of principal and accrued interest short of the original maturity date.  Apparently none of the six trenches of prepetition secured debt included any form of liquidated damage provisions for prepayment prior to a certain date.  Id. at 399.  He acknowledged that absent a provision in the underlying agreement authorizing the payment fee, costs or charges, the secured party is prohibited from incorporating such amounts into its allowed secured claim.  Id. at 399.  Despite the absence of any form of liquidated damage provision in the indentures, the court rejected the argument of the debtors and stated that the secured lenders still had an unsecured claim for damages for the Debtor's breach of the agreements because their "expectation of an uninterrupted payment stream has been dashed giving rise to damages, albeit not measurable as the Lenders would wish."  Id. at 399.

    This Court respectfully disagrees with Calpine because it reads into agreements between

In re Manville Forest Products Corp., 43 B.R. 293, 298 (Bankr. S.D.N.Y. 1984), aff'd in part and rev'd in part, 60 B.R. 403 (S.D.N.Y. 1986). Bankruptcy Code § 362(a)(3) prohibits any act to obtain property of the estate and Code §§ 362(a)(4) and (a)(5) prohibit acts to create, perfect or enforce liens against property of the debtor. Finally Code § 362(a)(6) prohibits any act to assess[8] a claim against the debtor that arose before the commencement of the case.

Absent acceleration, pre-bankruptcy, a mortgagee may only sue for unpaid installments because the balance is not then due, i.e. it is unmatured. See Federal Mortage, supra and Mortgages and Mortgage Foreclosure in New York, §28:1 (Sept. 2007). A claim is allowable under Code § 502(b)(1) even though it is unmatured. Acceleration by the mortgagee is not necessary to render the claim allowable. Here, acceleration actually occurred automatically on the Petition Date and the 2009 Notes were no longer unmatured.[9]

_____

sophisticated parties provisions that are not there. Perhaps the parties negotiated on the subject but were unable to reach an agreement. It may simply, although less probably, be that this subject was overlooked. In either case, the court cannot supply what is absent. See In re Solutia, Inc., 2007 WL 1302609 (Bankr. S.D.N.Y. 2007), 48 Bankr. Ct. Dec. 50 (Bankr. S.D.N.Y.), this court rejected similar efforts though the context was somewhat different. Nothing in the Bankruptcy Code requires this court to provide the 2009 Noteholders with more than the Original Indenture provides. Put yet another way, they have no dashed expectations for which compensation is due.

[8] The word "assess" is not defined in the Bankruptcy Code nor can a definition be found in Black's Law Dictionary (8th Ed.). Since the word is one without a specific legal meaning, this court finds that as used in Code §365(a)(6) assess is a word of general meaning. While one meaning of the word is to fix the tax rate on property, the word also can mean to simply determine the size or value of something. See Merriam-Webster Online Dictionary, "assess", definition (4). That is precisely what the April 7 Notice was attempting to do.

[9] At least two cases hold that because of the broad definition of claim in the Code § 101(5) that all debts are accelerated on the Petition Date. See In re Manville Forest Products Corp., 43 B.R. at 297; United States Trust Co. V. LTV Steel Co. (In re Chateaugay Corp.), 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), aff'd. 170 B.R. 551 (S.D.N.Y. 1994). However, reference to Code § 101(5) is unnecessary in light of the explicit provision in Code § 502(b)(1)

The April 7 Notice was an attempt to increase the size of the claim of the 2009 Noteholders.[10]  This court finds that where the indenture provides for automatic acceleration any attempt at deacceleration would violate the automatic stay since it is a direct attempt to get more property from the debtor and the estate, either through a simple increase in the amount of a pro-rata plan distribution or through recovery of a greater amount of the collateral which secures the claim.  In either case, deacceleration is an attempt to "assess" an increased claim against the amount of the surplus that would otherwise be available to the estate and creditors.[11]

OID and Its Relationship to the Allowable Amount of the 2009 Bondholders' Claim

OID stands for original issue discount ("OID").  It is a tax accounting concept that has applicability to the allowance of claims in bankruptcy.  When bonds of face amount of $1,000 are issued for $900, the difference of $100 is  the original issue discount.  When and as the $100 is paid by the borrower, the "lender" is receiving interest, not a return of capital.  The tax laws

---

that an unmatured claim should be allowed.  Under that provision a mortgagee who has not accelerated has an allowable claim for the full amount of the debt notwithstanding an inability to sue under the state law.

[10]  It is unclear whether the April 7 Notice was an attempt to assert an unsecured or a secured claim.  See In re Calpine, supra at 399 ("[The] Secured Lenders still have an unsecured claim for damages for the Debtors' breach of agreements." (Emphasis added) Because of this court's various holdings that lead to the conclusion that there is no allowable claim in the facts of this case for "expectation" damages it is unnecessary to consider whether the claim would be a secured or unsecured one.

[11]  Under certain circumstances, a mortgagee may revoke a notice of acceleration without the consent of the mortgagor.  However revocation may not occur once the mortgagor has relied on acceleration as the Debtors have here.  See, e.g., Key International Manufacturing, Inc. v. Stillman, 103 A.D. 2d 475, 477, 480 N.Y.S. 2d 528 (holding that acceleration clauses are quite common and are generally enforceable according to their terms); In re LHD realty Corp., 726 F.2d 327, 333 (7th Cir. 1984) (holding lender loses right to a premium when it elects to accelerate the debt and declining to allow lender to avoid the consequences of its choice of acceleration); and In re Adu-Kofi, 94 B.R. 14 (Bankr. R.I. 1988).

provide for this treatment.  A portion of the OID is deemed to accrue each year.

Under the Code, OID is also treated as interest.  Code § 502(b)(2) provides that the bankruptcy court is to disallow any portion of a claim to the extent "such claim is for unmatured interest."   The legislative history of this section is clear that this provision was intended to apply to notes issued at a discount.  See H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977),  pp. 353-55 reprinted in Thomson West 2006 Bankruptcy Code,  Rules & Official Forms at 218.  As the legislative history makes clear, a note issued at a discount is not allowable for its face amount.  Rather it is allowable at the face amount less the unaccrued portion of the OID.  The Second Circuit uses the constant interest method to calculate yearly OID in bankruptcy cases.  See discussion in In re Chateaugay,  961 F. 2d. 378, 383 (2d Cir. 1992).

In this case, there is no dispute that the 2009 Notes were issued with OID.  It is also clear that no portion of the OID was to be paid prior to maturity.  Conceptually at the moment the petitions were filed, the 2009 Notes accelerated and the OID that had accrued to that time also became due.  Thus, the base amount of the 2009 Noteholders' claim is the amount actually advanced on the Notes plus the OID accrued to the petition date.

During the pendency of the Chapter 11 cases, the 2009 Noteholders have been entitled to pendency interest.  Pendency interest must be paid on secured claims but need not be paid at the contract rate.  All parties are agreed on this point which is well settled law.  See Code § 506(b) and In re Milham (Key Bank National Assn. v. Milham) ("Milham"), 141 F.3d 420, 423 (2d Cir. 1998).  The 2009 Bondholders have been paid interest during the pendency of these cases in the amount of the Interest Payments.  They accepted the Interest Payments without protest prior to June 2007, although they now argue that the word "interest" in the cash collateral orders includes

21

accruing OID which they have not been paid.  The court need not resolve this question since both the Debtors and the Creditors' Committee are prepared to allow OID that accrued during the pendency of these cases to be paid as pendency interest on the Plan's effective date.  This amount, the second piece of the 2009 Noteholders' allowable claim, needs to be added to the base amount of the 2009 Noteholders' claim.  See Milham at 423 ("On the date of confirmation, the allowed claim of an oversecured creditor is augmented by the inclusion of Section 506(b) pendency interest.")

The next question involves the balance of the OID from the effective date until the Stated Maturity Date.  The 2009 Noteholders say that the amount of their claim is $223 million because that is the principal amount stated to be due at the Stated Maturity Date.  The Debtors and the Creditors' Committee state the allowable amount of the claim is $223 million less the amount of the unaccrued post-effective date OID.  (This court does not find Code § 506(b) relevant to this issue since that provision deals only with pendency interest.  See Milham, supra at 423.)  The 2009 Noteholders argue that they are entitled to recover the entire balance of the $223 million not already included in this Court's calculations, even if it is OID because that is the "principal" amount of the 2009 Notes and because it is conceded that any claim they have is fully secured.[12] The Debtors and the Creditors' Committee take the view that the word "principal" as used in the 2009 Notes and Guarantees is not controlling because of Code § 502(b)(2), inter alia, and that the proper amount of the claim is the stated principal of $223 million less post-effective unaccrued

---

[12]  The amount of the security held never determines the amount of an over-secured creditor's claim.  Rather the amount of the claim is determined by the underlying documents and the law.

22

OID.  In the Disclosure Statement the Debtors estimated that as of June 30, 2007 the claim

calculated in this manner would be $205.9 million using the constant interest method.

Under New York law, the mortgagee upon acceleration may not retain or recovery any

unearned portion of the interest charged even if the collateral is sufficient.  See Berman v.

Schwartz, 59 Misc. 2d 184, 186, 298 N.Y.S.2d 185 (Sup.Ct. Special Term, NY Co. 1968); Atlas

Financial Corp. v. Ezrine, 42 A.D.2d 256, 345 N.Y.S.2d 36 ( 1st Dept. 1973);  Bostwick-Westbury

Corp. v. Commercial Trading Co., 94 Misc. 2d 401 (N.Y. City Civ. Ct. 1978) and Aardwoolf

Corp. v. Nelson Capital Corp., 861 F.2d 46 (2d. Cir. 1988).

This court discerns no reason to reach a different result under the Code.  No principal was

advanced to Solutia for the amount of the OID.  The underlying fact that the obligation is secured

does not change this fact.  There are no apparent bankruptcy policy reasons to be found in the

legislative history, Code §§ 502 and 506 and the relevant case law to warrant different treatment

for unsecured and secured OID.  And the unfairness that Congress was concerned with is just as

real with a secured claim as an unsecured one - that a discounted note paid off early in its life

span would therefore have a higher claim value than one paid off later, if unmatured interest was

not disallowed.  Importantly, this result is totally consistent with New York Law.  See cases cited

supra.

The [P]repayment Claim

The secured prong of the 2009 Noteholders' arguments are directed to obtaining interest at

the contract rate through the Stated Maturity Date.  Simply put they want post-effective date

interest even though their allowed claim will be paid on the effective date and their funds will no

longer be at risk.  The additional amount the 2009 Noteholders seek in this part of their claim is

23

approximately $60 million.  The interest payments are being sought notwithstanding the fact that

the 2009 Noteholders will have received repayment of what this court has determined to be the

allowable principal amount of their claim plus the balance of the pending interest and prepetition

accrued OID.  These are the "expectation" claims of a future income stream referred to in

Calpine, supra.

It has long been settled in New York that a borrower does not have a right to prepay an

instrument in the absence of a prepayment clause.  Arthur v. Burkich, 131 A.D.2d 105, 520

N.Y.S.2d 638 (3rd Dept. 1987).   Among the  policy reasons behind forbidding prepayment is that

the mortgagee has bargained for a stream of income over a fixed period of time.  Id. at 107.

By incorporating a provision for automatic acceleration, the 2009 Noteholders made a

decision to give up their future income stream in favor of having an immediate right to collect

their entire debt.  Because the 2009 Notes were automatically accelerated, any payment at this

time would not be a prepayment.  Prepayment can only occur prior to the maturity date.  See LHD

Realty at 330-31.  Here payment will be a post- maturity date repayment.  This court need not

concern itself with the enforceability of prepayment premiums in bankruptcy.[13]

It is possible to provide contractually for post-acceleration "yield maintenance" of some

sort.  The 2009 Noteholders point to a number of provisions in the 2009 Indenture that they say

act to ensure they can collect the Interest Payments until the Stated Maturity Date despite

---

[13]  Nor is this court concerned with a situation in which a debtor in possession seeks to
pay off a secured debt containing a prepayment premium clause prior to confirmation, which
raises different issues in light of the unknown outcome of the case.  See Calpine, supra, and In re
Premier Entertainment Biloxi LLC, Case No. 06-50975 (Feb. 2, 2007), cited by the 2009
Noteholders.

acceleration.  None of these clauses have the explicitness that would be expected in a typical post-acceleration yield-maintenance clause.  See extended discussion and examples of such clauses in Northwestern Mutual Life Insurance Co. v. Uniondale Realty Associates ("Northwest"), 11 Misc. 3d 980, 816 N.Y.S.2d 831 (Sup.Ct. Nassau Co. 2006).

The Defeasance Provision

The defeasance clause the 2009 Noteholders' point to in an effort to obtain "expectation" damages is a provision in the Original Indenture that would allow the borrowers prior to maturity to make an arrangement for the payment of the 2009 Notes under certain limited circumstances or to provide for the payment of the 2009 Notes from an alternative source by supplying U.S. obligations in an amount sufficient to make the regularly scheduled payments of interest and principal until the Original Maturity Date.  See Original Indenture at section 9.01.  Without the defeasance clause and with no prepayment right as a matter of law, see Arthur v. Burick, supra, the borrowers would be unable to secure the release of the collateral without the consent of the lenders, something it might wish or need to do.  Defeasance is a feature designed to protect borrowers, not lenders.  See Calpine, supra at 399.  The Debtors are not seeking to prepay the 2009 Notes as discussed earlier nor are they seeking to effect defeasance.  The defeasance clause is irrelevant in the present situation.[14]

"Implied" No-Call Provision

The 2009 Noteholders struggle to imply a no-call provision into the 2009 Notes from the following language: "the Company shall pay the principal of and interest on the Notes on the dates

---

[14]  Under Section 11.08 termination of the security interests do not require Legal Defeasance.  They can also be terminated upon payment of the 2009 Notes in full.

and in the manner provided in the Notes and this 2009 Indenture." This plain vanilla language does nothing beyond the obvious, which is to state that payments shall be made when due. This court has already agreed that under New York law there is no right to prepay. <u>See</u> discussion <u>supra</u>.

However, New York law also allows acceleration in the presence of an acceleration clause in the controlling instrument. Here an acceleration clause was contained in the Original Indenture. Acceleration occurred under the clause and has altered the maturity or "due" date, as also provided by New York law. The quoted language is plainly insufficiently explicit to establish any right to post-acceleration interest at the contract rate until maturity.

Much, if not all of the 2009 Noteholders' brief proceeds on the predicate that acceleration did not occur or was effectively reversed. Since that is legally and factually wrong, the consequences they argue for do not flow. The time and place to have obtained the additional rights the 2009 Noteholders seek was at the bargaining table. This court is limited to interpreting the terms of the contracts as they exist.

<u>Guarantee</u>

The 2009 Bonds were guaranteed by the Debtor Guarantors, some of which for the purposes of this motion are deemed to be solvent. The 2009 Noteholders argue that these subsidiaries will have to make up any amount the 2009 Noteholders claim is due that is not paid by the Debtors. Unfortunately for the 2009 Noteholders, this argument is based on a faulty premise: that the Subsidiary Guarantors are liable for more than the amount owed by the Debtors. If the Debtors are paying the full amount of the allowed claim, there remains no claim to assert against

the Subsidiary Guarantors regardless of their solvency.[15]

The acceleration operated to cap the amount due under the guarantee. The unearned OID must also be deducted from the amount owed by the guarantors since acceleration cut off the right to future interest at the rate fixed in the accelerated instrument against the guarantor just as it did against the primary obligor. See Franklin Bank of New York v. Capobianco, 51 Misc. 2d 30, 32, 272 N.Y.S. 2d 519, (Sup. Ct., Spec. Term, Suffolk Co. 1966). The acceleration of the obligation guaranteed forms the basis for collection from the guarantor and for determination of the amount guarantee. See Delaware Funds, Inc. B. Zuckerman-Honickman, Inc., 43 A.D.2d 889, 351 N.Y.S.2d 769 (N.Y.Co. 1974)(Liability of a guarantor is strictly limited by the scope and meaning of instrument executed and liability cannot exceed that of the principal). See also Fidelity-Philadelphia Trust Co. v. D. & D. Electric Co., 9 N.Y.S.2d 446 (Sup. Ct., App. Term., 1st Dept 1938) (Upon acceleration of rent due under lease, guarantor liable for full amount.)

Since Solutia's current plan provides for payment in full in cash of the entire amount this court holds is due to the 2009 Noteholders on the Proof of Claim there is no need to discuss the solvent subsidiary argument as it is irrelevant.

Technical Sufficiency of the Proof of Claim

An issue has been raised as to whether the Proof of Claim filed  was sufficiently explicit as to  the claim for the so-called "expectation" damages of interest at the contract rate to the Stated

---

[15]  There are a few circumstances in which a guarantor may be liable even though the primary obligor is not. See e.g. Code § 524 (e). However, this is not one of them. Here there is no discontinuity between the allowed amount of the claim against the Debtor and the allowable amount of the claim against the Subsidiary Guarantors. Since payment in full will be made by the Debtors of the allowed amount of the claim against them, no additional recovery is available from the Subsidiary Guarantors.

Maturity Date.  Given that the 2009 Notes had been automatically accelerated at the time the proof of claim was filed and the effect of New York law, it probably was not.  However, the issue is a moot point based on this court's various holdings.

CONCLUSION

For the foregoing reasons, this court grants the motion for partial summary judgment.  The court disallows so much of the Proof of Claim as is for so-called "expectation" damages comprised of interest at the contract rate from the effective date to the Stated Maturity Date.  Further the court disallows so much of the claim for  $223 million as represents post-effective date unearned OID.

The parties are directed to submit an agreed order effectuating this court's decision and fixing at least the minimum actual dollar amount of the claim on or before 3 p.m. November 20, 2007. [16]

Dated: New York, New York
        November 9, 2007

   /s/ **Prudence Carter Beatty**   
                U.S.B.J.

---

[16]  It would appear that the parties should be able to compute the proper amount of the minimum claim without court intervention based on this court's rulings on the controlling legal issues.  Given the tight time constraints of this case the court expects all parties to work together to prepare a consensual order that not only implements this court's rulings but also fixes the actual amount of the total claim appropriately divided between the petition date portions (the original issue amount accrued and the accrued pre-petition OID) and the post-petition date portion (the accrued pendency OID).

28